181784 Tyler Raymond Norton v. Michael Rodrigues Good morning. May it please the Court, Stephen Dietrich for Defending Appellant Michael Rodrigues, Deputy Superintendent at the Susan Baranowski Correctional Center. In prison failure to protect cases such as this, this Court has stated that the focus is on what correction officials knew and what they did in response. With qualified immunity warranted on undisputed material facts to correction officials whose actions and beliefs were objectively reasonable, even if mistaken. On the undisputed facts in this case, not only was Mr. Rodrigues' decision to house Mr. Norton in the G1 Housing Unit at SBCC an objectively reasonable response to Mr. Norton's security needs, but there's nothing in this record from which to conclude that Mr. Rodrigues' judgment was even mistaken. What were the objectively reasonable responses by Mr. Rodrigues? Just on the jurisdictional point, can you just help me understand your understanding of what the record is so that I can figure out whether there's a dispute over facts or whether there's a dispute over law and how we're supposed to think about that. So maybe just starting with evidence of the knowledge of your client of the complaints about safety. If I may begin by answering your question by just stating preliminarily what I think the lower court did was to couch determinations of law, objective reasonableness, substantial risk of serious harm. Maybe just to make it precise, and this may not be a key point, if it's not a key point just tell me why it isn't, but there's allegations about five letters that were sent. And as I read it, it does not say, does not allege that they were received or read by Rodrigues. Correct. And it doesn't say what the content of those letters were. Correct. If the district court concluded from that piece of evidence in the record, those allegations, that Rodrigues did know about the complaints, do we consider that a factual finding by the district court that you're now disputing or is that a legal judgment? Do you see what I'm saying? Well, to the extent that there's no evidence in the record of, certainly the letters are not in evidence. The date of the letters is not in evidence. The content of the letters is not in evidence. What is in evidence is the expressed denial of having received any such letters. I would say that's an evidentiary, there's no material fact in dispute as to Mr. Rodrigues' knowledge. We don't know what these letters, assuming that they existed, would have informed Mr. Rodrigues. Were we on summary judgment or pleading? I forget. Summary judgment. What was the status of the discovery? The discovery, Your Honor, was two-pronged. Initially, there was a request for documents that went out and defendants produced all correspondence from Mr. Possession, from Mr. Norton to correction officials and specifically to Mr. Rodrigues. Then there was a change of counsel due to the unfortunate death of original counsel, at which point Mr. Norton's attorney took the deposition of Mr. Rodrigues. And Mr. Rodrigues confirmed what he had already said by way of affidavit, which is that he never received a letter or was unaware of any other letter after the transfer to the G1 unit that raised the safety concern. And this attestation is made in the context of Mr. Norton having the opportunity So in the document production, the corrections office did not find any correspondence, any of these five alleged correspondences from Mr. Norton? Correct. What was in the possession of the department was a letter from Mr. Norton, received December 29th in the superintendent's office, to which Mr. Rodrigues responded by letter on January 7th. And there was a written communication by Mr. Norton after the incident, after he was returned to the G1 housing unit, which prompted an interview of him, at which time Mr. Norton said, I'm fine living in G1 because nobody will assault me here and I can't go anywhere else but G1. So those are the two letters that were produced that had anything to do with Mr. Norton's safety concerns as expressed by him. So what was the objective, reasonable response by Mr. Rodrigues? It was a reasonable response to remove Mr. Norton immediately from his general population unit when he expressed concern for his state's safety. Could you get back to Judge Barron's question about what facts are in dispute from your perspective? I would suggest that... Based on what the district court found, please. Well, the district court's decision was all of three sentences, so they didn't find facts in dispute. They jumped to a determination that there was a substantial risk of... Known to Rodrigues. Serious harm... Known to Rodrigues. Presumably so. Yes, to which he was deliberately indifferent. But the predicate for that is what I'm focused on, which is that if the predicate for the district court's ruling was that the risk was known to Rodrigues, and you're appealing on the ground that he didn't know of the risk, it's one thing if he said even though he knew of the risk, we still win unqualified immunity. But you also seem to be arguing to us that he didn't know of the risk because he was never informed about it. Because the records, as you just went through, show that there's no indication that he ever was apprised of it. Well, he certainly knew of the risk that occurred when Mr. Norton was in general population. Yeah, but with respect to G1, that's the issue. Right, which prompted... Right. But with respect to G1, you're telling us that we should decide the case on the understanding that he did not know of a risk facing him in G1. Correct? Correct. And the question is, did the district court share your understanding of that point about his knowledge? To me, it's hard to read the district court's opinion as if it did share that understanding. And then if that's right, then what I'm wondering is how do we have jurisdiction here? Maybe there's a reason we still do. Maybe that dispute over whether he knew it is a legal question. But I'm just not sure the precedent supports that conclusion or whether what you're really doing is just differing with the facts. So Judge O'Toole's opinion left me to glean what the facts are in the case that might have given rise to his ruling. I'm sorry, did Norton contradict your understanding of the facts? He did not, Your Honor. Was he deposed? Mr. Norton was not deposed. But all the facts as set forth in our brief are undisputed facts. Well, where does this notion come in that there were five letters if there's nothing in the record to support that? Well, just by way of chronology, the original complaint says nothing about five letters. The amended complaint says nothing about five letters. A contemporaneous affidavit by Mr. Norton with the amended complaint says nothing about five letters. Only two years later into the litigation is there a reference to these five letters. In what? Reference in what? In an affidavit. Yeah, so that's evidence. Well, but it's evidence of what? It's evidence that the letters arguably existed and were sent, but there's no evidence. And you're accepting that to be true? Well, I have to. Right, for the purpose of this appeal. Okay, so then the next question is, is the district court seems to have drawn an inference that in consequence of that affidavit, Rodriguez would have known about the risk? And I guess what I'm wondering is, you're disputing that. I'm disputing... You have to be disputing that. You're not accepting that he did know from those letters. Well, exactly, since he didn't receive the letters and we don't know what the content of the letters are. And I guess what I'm asking is, if you're disputing that, are you disputing a factual point for purposes of the jurisdictional issue, or are you just making a legal argument in which you're accepting all the facts that the plaintiff has asserted? In other words, what do we do with an inference to be drawn from facts for purposes of the jurisdictional question? That's right. What I would say is he's entitled to facts asserted of evidentiary quality, and not just inferences, but reasonable inferences. And in our position, which is, I guess, a legal question, is it is not a reasonable inference based upon this reference, this record, that the fact that letters were sent gave Mr. Rodriguez any notice. There's no reason, there's no opportunity or reason for the lower court to have concluded that this informed Mr. Rodriguez of a risk sufficient to which Mr. Rodriguez's non-action would constitute deliberate indifference. I would ask, my time being up, I would just ask the court to focus on the many responses to the risk of harm by Mr. Rodriguez. The affidavits in the absence of risk communicated to Mr. Rodriguez. The Rodriguez letter back to Mr. Norton, which is proof that he did not, in fact, draw the inference of a substantial risk of serious harm. The video, which shows the multitude of ways in which Mr. Norton could have self-managed his own security by following the rules, by notifying correction officers, by asking him to lock in at the retreat. One last question. Are you arguing on appeal that if we not only accept the letters, and I take it that you're saying you have to accept that the letters are there, but if we also accept the inference that in consequence of those letters, the risk that Norton faced in G1, that he alleges he had, was known to Rodriguez, that nonetheless, Rodriguez is entitled to qualified immunity? Yes, Your Honor. Again, and just what's that piece of the argument? So assume the letters were sent, the letters said, gee, I have this risk of harm. Why is there still qualified immunity in that event? Because there were many off-ramps by Mr. Norton whereby he could have avoided the injury and the assault, number one. If he had followed institution rules, if he had asked to lock in, if he had run away from the second altercation, if he had informed correction officers immediately after the first incident that something had happened, all of those break the causation connection between any alleged deliberate indifference on the part of Mr. Rodriguez and the actual injury. And the last thing I would say about that, Your Honor, because it also goes to the issue of causation, is please look at Mr. Norton's explanation for why the assaults occurred. His explanation is that it had nothing to do with the events of December 2014, had nothing to do with a gang, you know, confrontation, but had everything to do with a racial confrontation in the unit involving people who had nothing to do with the incident back in December 2014. Thank you. Good morning. John Pavlos on behalf of Mr. Norton. If it pleases the court, the omissions in the appellant's brief as to the factual record from the district court are alarming. We've made reference to it in our brief. Just a short shrift, a very quick timeline. Mr. Norton, on December 22nd, 2015, was assaulted in his cell by a number of other inmates, one of whom, Louis Louise, who is credited and Mr. Rodriguez acknowledged that his deposition was in a position of leadership or power for the Gangster Disciple Gang, which is quite prevalent, particularly at Sousa Baranowski. And Louis Louise and others came into Mr. Norton's cell and at knife point with jail-fashioned knives, two of them, assaulted and robbed him, took his TV, his Walkman, and threatened him that if he told anyone, if he told the institution, that he would be, well, he used some colorful language, but it was clear that it was serious physical harm. Mr. Norton told the administration, fearing for his life, he was immediately taken into the segregation unit, as was Louis Louise. In the segregation unit, Louis Louise had the ability to speak to Mr. Norton and again threatened him and this time said, if I can't get to you, one of my associates in the Gangster Disciples will. The administration searched various cells, they found the knives, they found Mr. Norton's property in Louis Louise's cell. Everything that happens after that, Mr. Rodriguez and the administration were on notice of the grave harm that Mr. Norton faced. Two weeks later, January 5th, Mr. Norton was placed in a unit in the population called G1. In G1, there were members of the Gangster Disciples, and what I mean by that, they had tattoos that identified them as being in the gang. At his deposition, Mr. Rodriguez said they were inactive. Gave no explanation for why he believed that. Said there was information in the perimeter security record, but he did not divulge what he based that on. That, I would suggest, is a material fact in dispute, and it is one of the issues that the court likely heard, it was prominent in our brief, and it would be something that a fact finder, the jury in district court, it would be within their province to decide. But critical to your case is the letters from Norton to Rodriguez, right? I don't know that it's critical. So we've heard much of the letters in this context saying that, first of all, there are no issues in dispute, and I think your question... I'm just asking you, are you saying you could succeed even if there was no indication that Rodriguez had specifically notified Rodriguez? Yes. I do not believe there's a requirement that an inmate complain. Perhaps he didn't know about the threat that awaited him in G1. Maybe he wasn't privy to the personnel that was already there. So are you saying at the point when these so-called inactive gang members were in the same holding unit as your client, that that in and of itself would constitute deliberate indifference? I would suggest that on the fact pattern that we have adduced, and there are two... Your Honor had asked questions about what constituted the factual record. There are two affidavits from Mr. Norton. His deposition was not noticed, was not taken by the DOC. So his representations are made in his complaint and then through those affidavits. I'm sorry. I'm just trying to figure out what facts are you relying on? Judge Barron, in response to Judge Barron's question, you said no, you don't really need to deal that much with the letters. I'm just trying to figure out what facts are in dispute. I understand. So the number five is significant only because Mr. Norton said that he sent five letters once he was placed in G1. I'm not sure the number is significant, but... ...to the issue of deliberate indifference. The fact that he was placed in a unit with the gang members that had assaulted him, threatened him, had already robbed him at knife point, and their leader had told him that either he or others would get to him. Do you have evidence in the record that disputes whether they were inactive? We would have no such other than... No, we don't. So that seems hard for you to win on the idea that merely being there with gang members that Rodriguez testified undisputed were inactive, that you could win. So the letters seem like they're pretty important because that would suggest that even though he thought they were inactive, you had letters from Norton to Rodriguez on your account that apprise Rodriguez of a reason to be concerned about Norton's safety, notwithstanding that he thought the other gang members there were inactive. I'm not sure we can look behind what their level of activation was or what Mr. Rodriguez based that upon. You don't have anything in the record to contradict him by your own account. Nor could we. Nor could we. The fact that they had tattoos... Whether you could or couldn't... On what basis would a jury conclude that they were active on this record? The only thing they have is somebody saying they're inactive. The question is the significant one, Your Honor, and we all do respect. What is the basis for saying that members that historically were part of a tracking system in the prison... The uncontradicted testimony of Rodriguez, that they were inactive. But what is it predicated upon? If the custodian of... Okay, I take that. One possibility is that you went even without the letters. That's just a pure legal question, it would seem like, I think, right? I think the credibility of the statement is something that the fact finder... Okay. With respect to the letters, it would seem to me your case is somewhat strengthened if there is a factual dispute as to whether Rodriguez was apprised by those letters of the risk. Apprised, again, I think would be updated, if you will. While he was in G1. Because there is institutional knowledge. I'm trying to help. Talk about the allegations that you say were contained in the letters, please. So, not in the record, but what is in the record is that Mr. Norton has stated that he sent these letters to the administration. He identified various people, including Rodriguez, but there was a... Wozniak was one of the names, and he was an original defendant. He's since been dismissed. But he was in the internal perimeter security. Okay, so now your opponent... You've made only a jurisdictional argument to us under brief. That's right. Okay. So your opponent says, I accept everything you're going to say right now. Those letters are true. They exist, they were sent. He's not disputing any of that. So, given all of that, your jurisdictional argument depends on the contention that he's disputing some fact. And I'm trying to figure out, with respect to the letters, are you asserting that he's disputing any fact with respect to the letters? My memory... In the brief, in his brief, he disputes that they have any evidentiary value whatsoever. Good, because he says that if I take as true that the allegation is true, the letters in the affidavit says letters were sent. That does not show that Rodriguez got the letter. It doesn't show what was in the letter. So he's not disputing anything that's in that affidavit. But you have filed a brief to us saying he's disputing facts, and therefore we have no jurisdiction, which is a potentially very forceful argument. So I'm trying to figure out what fact, with respect to the letters, are you contending he disputes, in light of the fact that he's accepting, word for word, as true, everything that the affidavit states. Again, with all due respect, he's not just disputing the letters. He's disputing the factual basis that is contained in both affidavits that Judge O'Toole based his opinion on. What is the fact he's disputing in those affidavits? That's what I'm trying to figure out. That there were complaints made, both verbal, that's part of the affidavit, that there are complaints made verbally, that there was an acknowledgement and a cell change once he's put in the G1 unit. There were a variety of things that appear, that are in those affidavits, that demonstrate or impute knowledge to both Rodriguez and the administration, that the GD, the Gangster Disciple Gang, has an ongoing hit, it was referred to. Last question, on the jurisdictional point. Assume every fact in the affidavit is accepted, and they make an argument, it is not reasonable on those facts to infer knowledge by Rodriguez. Is that a legal argument? Because it sounds to me like it might be, right, for summary judgment. Just as a matter of law, accepting all those facts is true, there is no reasonable basis for inference, given those facts, that Rodriguez would have known of the risk. Your Honor, in his deposition, he acknowledged, at one point he said, I acknowledge that I received these complaints, we acknowledge that Gangster Disciples had, we acknowledge that he could have had a hit, so-called, a very formalized threat, if you will, a generalized threat with the Gangster Disciples, he acknowledged that. When asked, why did you put him in G1 with these other Gangster Disciple members, two weeks later, he said, well, they were inactive. Now, I would suggest that that is a critical, factual question for the jury. Whether or not that's a credible statement, whether or not it can be further elucidated, or whether they can identify, whether he can identify what it was predicated on, that is a question of fact for the jury. Otherwise, it's completely unreasonable, I would suggest, for the placement. There were other options. He could have been moved out of the institution. He could have been put in other units. But he was placed with the very people that he had, and there's no dispute about that, complained to very specifically, very credibly, with credibility, as to the organized gang that had threatened him and had robbed him already. So, yeah, I do think that it's a bit of a, believe the word, search of words, a transmogrification. What he's doing is trying to say that these factual disputes are all accepted, and it's a question of law. When clearly the court, Judge O'Toole did not agree, believe that the record contained factual disputes that were appropriate for a trial of fact. And that's where we are. I'm asking you to dismiss this based on jurisdictional reasons and return it to the trial list in the district court. Thank you. Thank you.